**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE RAMIREZ,<br>JOSHUA RUIZ,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF NEWARK, ESSEX COUNTY CORRECTIONAL FACILITY, AND OFFICERS JOHN DOE 1-10 (names being ficticious),<br><br>Defendants,<br><br>THE CITY OF NEWARK,<br><br>Defendant/ Third Party Plaintiff,<br><br>COUNTY OF ESSEX, ESSEX COUNTY PROSECUTOR'S OFFICE, RICHARD ROE, DAVID ZOE (names being ficticious)<br><br>Third Party Defendants. | Civil Action No. 11-CV-1150 (SDW-MCA)<br><br><br>**OPINION**<br><br><br>June 14, 2012 |

**WIGENTON**, District Judge.

Before this Court is Third Party Defendant  County of Essex's ("Essex County") Motion to Dismiss Third Party Plaintiff City of Newark's ("City") third party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.  Venue is proper pursuant to 28 U.S.C. § 1391(b).  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, this Court **GRANTS** Defendant's Motion to Dismiss in part and **DENIES** it in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case is an indemnification action between the City and Essex County.  The City is seeking indemnification from Essex County for Plaintiffs' underlying action against the City.  On June 3, 2009, Plaintiffs Jorge Ramirez and Joshua Ruiz were apprehended in the City of Newark.  (*See* Pls.' Am. Compl. ¶ 11.)  Plaintiffs were driving on Montclair Avenue in Newark, NJ, on their way to pick up a friend when police cars suddenly surrounded Plaintiff Ramirez's vehicle.  (*See id.* at ¶¶ 10-11.)  The police personnel approached the vehicle with guns drawn.  (*See id.* at ¶ 11.)  After Plaintiffs exited the vehicle, they were forced to the ground and hand-cuffed. (*See id.*)  Without having been read their rights or informed of the charges against them, Plaintiffs were then transported to the Second Precinct at One Lincoln Avenue and placed in a cell for several hours. (*See id.*)  Plaintiffs were later transported to Newark Central Booking where they were held for four to five days prior to appearing before a judge.  (*See id*.)   Plaintiffs were then transferred to Essex County Corrections Facility.  (*See id.*)  While incarcerated at Essex County Corrections Facility, Plaintiffs were assaulted by an inmate.  (*See* Pls.' Am. Compl. ¶ 12.)  "Plaintiff Ramirez was hit upon the head violently and repeatedly by an inmate," causing injuries that required medical attention. (*Id.*)  After being at the Essex County Correctional Facility for thirteen months, Plaintiffs' charges were dismissed.  (*See id.* at ¶ 11; *see also* Decl. of Steve F. Olivo Ex. A, 48.)

On March 1, 2011, Plaintiffs filed a complaint against ten unnamed police officers for the City and the City itself.  (*See* dkt. no. 1.)  On April 29, 2011, Plaintiffs filed an amended complaint adding the Essex County Correctional Facility as a defendant.  (*See* dkt. no. 5.)  The complaint asserted six different causes of action.  (*See id*.)  First, Plaintiffs alleged that Defendant Police Officers, the City, and the Essex County Correctional Facility (Collectively "Defendants"), acting willfully and knowingly, conspired to "deprive plaintiffs of their constitutional rights secured by 42

U.S.C. Section 1983." (Pls.' Am. Compl. ¶¶ 32, 33.)  Second, Plaintiffs alleged that Defendant Officers willfully deprived Plaintiffs of their constitutional rights pursuant to Article 1, Section 7 of the New Jersey Constitution and that the City is vicariously liable for said deprivation. (*See id*. at ¶¶ 37, 38.)  Third, Plaintiffs claimed damages for the "willful, unlawful, unwarranted, and intentional assault and battery upon Plaintiffs" committed by Defendant Officers. (*Id*. at ¶ 41.) Fourth, Plaintiffs alleged that the City maliciously prosecuted them by bringing criminal charges against them absent probable cause, resulting in a prolonged confinement during which time Plaintiffs were assaulted by another inmate. (*See id*. at ¶¶ 12, 44.)  Last, Plaintiffs claimed that the City negligently retained officers it had reason to know posed a danger to society thereby resulting in Plaintiffs' injuries. (*See id*. ¶¶ 50-55.)  Plaintiffs and Defendants stipulated to the dismissal of the fifth cause of action claiming negligent infliction of emotional distress. (*See* dkt. no. 13.)

On July 26, 2011 the City filed an answer to Plaintiffs' complaint. ( *See* dkt. no. 14.)  Then, on January 13, 2012, the City filed a motion seeking an order permitting leave to file an amended answer to Plaintiffs' amended complaint and third party complaint. (*See* dkt. no. 27.)  The motion was granted and the City subsequently filed an amended answer to Plaintiffs' complaint and a third party complaint against Essex County seeking indemnification for Plaintiffs' injuries. (*See* dkt. no. 30.)  The City's third party complaint sets forth four bases for indemnification.  First, the City alleges that the injuries and civil rights violations alleged by Plaintiffs occurred while Plaintiffs were in the custody of Essex County. (*See* Third Party Compl., First Cause of Action, ¶¶ 1-3.) Second, the City asserts that the Essex County Prosecutor's Office was responsible for managing Plaintiffs' case and failed to provide due process and a speedy trial. (*See id.*, Second Cause of Action, ¶ 4.)  Third, the City contends that Plaintiffs' assault occurred under the supervision of an Essex County corrections officer responsible for protecting Ramirez's safety. (*See id.*, Third Cause

3

of Action, ¶ 3.)  Fourth, the City claims that Plaintiffs' thirteen-month confinement is a result of the Essex County assistant prosecutor's failure to dispose of Plaintiffs' case in a timely manner.  (*See id.*, Fourth Cause of Action, ¶ 4.)

On March 26, 2012, Essex County filed the instant motion to dismiss the City's complaint. (*See* dkt. no. 36.)  First, Essex County claims that seeking liability for third party contribution is impermissible under 42 U.S.C. § 1983.  (*See* Third Party Def.'s Br. 3.)  Essex County further asserts that the New Jersey Tort Claims Act ("NJTCA") provides correctional institutions with absolute immunity from injuries resulting from inmate-on-inmate assaults as well as blanket immunity from other types of claims.  (*See id.* at 4.)  In additional, Essex County claims that the City's complaint is insufficient to satisfy the pleading standard enumerated in *Ashcroft v. Iqbal*, 129 L. Ed. 2d 1937, 173 (U.S. 2009).  (*See id.* at 5.)  Finally, Essex County contends that under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (U.S. 1978) a complaining party asserting a § 1983 claim must show that the public entity in question has violated a custom or practice.  (*See id.*)

## II.   LEGAL STANDARD

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); See *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)).     In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most

4

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Id.,* the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

As a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted). However, there exists an exception to that general rule in that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'" *Cooper v.*

5

*Samsung Elec. Am., Inc.,* 374 F. App'x 250, 253 n.3 (3d Cir. Mar. 30, 2010) (quoting *Pryor*, 288 F.3d at 560).

## III.    DISCUSSION

a.    *Contribution for a 42 U.S.C. § 1983 Claim*

Basic "considerations of justice suggest that tort-feasors whose conduct have caused a plaintiff a single injury should be equally liable." *Miller v. Apartments and Homes of New Jersey*, 646 F.2d 101, 109 (3d Cir. 1981). As such, "the rule of contribution is intimately bound up with the nature . . . of the substantive federal rights created by the civil rights acts." *Id*. at 108. The federal courts are therefore not restricted from implying "a federal common law of contribution in civil rights cases." *Id*. Thus, contribution is permissible for § 1983 claims. *See Klaitz v. New Jersey*, No. 04-529, 2006 WL 1843115 (D.N.J. June 30, 2006).

Essex County argues that *Miller* is not applicable to this case because: (1) *Miller* addressed a 42 U.S.C. § 1982 claim, not a § 1983 claim; (2) *Miller* relies on *Glus v. GC Murphy Co.*, 629 F.2d 248 (3d Cir. 1980), which held that a federal right of contribution could be implied from Title VII, but was overturned by the Supreme Court's decision in *Northwest Airlines, Inc. v. Transit Workers Union of America*, 451 U.S. 77, 101 (1981); and (3) the decision in *Rocuba v. Mackrell*, No. 3:10-1465, 2011 WL 5869787 at *3 (M.D. Pa. Nov. 22, 2011), relying on *Northwest Airlines*, which holds that "a separate third-party action seeking indemnification or contribution is not permitted under § 1983," is controlling. (Third Party Def.'s Reply Br. 1-2.) The City argues that *Rocuba* is factually distinguishable from this case, that *Miller* is still good law, and therefore, that a right to contribution does exist under § 1983. (Third Party Pl.'s Br. 6.)

This Court agrees with the City's assertion that *Miller* is controlling. *Klaitz v. New Jersey*, is instructive here. In *Klaitz*, plaintiffs alleged that third-party defendants, several corrections

officers employed by the State, assaulted them in the shower area of the Gloucester County Jail during a routine strip search. *See Klaitz*, 2006 WL 1843115 at \*1. Plaintiffs brought actions against various entities of the State of New Jersey ("the State Defendants") as well as entities of Gloucester County ("the County Defendants") pursuant to 42 U.S.C. § 1983. *See id*. at \*3. The Court dismissed all claims against the State Defendants. *See id*. As a result, the only remaining claims were those alleging that "the County Defendants subjected Plaintiffs to the excessive use of force and failed to train and/or supervise their officers properly." *Id*. The County Defendants then filed a third party complaint against the corrections officers responsible for the alleged assault seeking contribution and indemnification. *See id*. Pursuant to federal common law, Judge Kugler permitted the County Defendants to seek contribution. *Id*. at \* 6. Third party defendants subsequently filed a motion for reconsideration challenging the validity of Judge Kugler's decision. *See Klaitz v. New Jersey*, No. 04-529, 2007 WL 608444 (D.N.J. Feb. 23, 2007).

Relying on the Supreme Court's decision in *Northwest Airlines* for support, the third party defendants in *Klaitz* asserted that the court erred in determining that federal common law dictates that "a right of contribution exists under § 1983." *Id*. at \*2. The Supreme Court in *Northwest Airlines* held that because both the Equal Pay Act and Title VII of the Civil Rights Act of 1964 are comprehensive legislative schemes, the Court could not "add a right to contribution to the statutory rights that Congress created" therein. *Northwest Airlines*, 451 U.S. at 98. In reaffirming his original holding, Judge Kugler opined that "while other circuits have expressly held that, under *Northwest Airlines* no right to contribution exists under § 1983, the Third Circuit has not so concluded" and therefore "district courts within this Circuit are compelled to follow the Third Circuit's decision in *Miller*." *Klaitz*, 2007 WL 608444 at \*3. Judge Kugler cited two decisions,

7

*Fishman v. De Meo*, 604 F.Supp. 873 (E.D.Pa. 1985) and *Alexander v. Hargrove*, No. 93-5510, 1994 U.S. Dist. Lexis 11674 (E.D.Pa. Aug. 16, 1994), to support his conclusion.

> In *Fishman*, Justice Pollack explained:
>
> The Court's determination [in *Northwest Airlines*] that contribution was unavailable to defendants in title VII and Equal Pay actions, stemmed from the premise that "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." [Defendant] does not contend, nor could it, that section 1983 creates the sort of detailed structure of statutory remedies that is contained in Title VII . . . Thus, neither the holding, nor the rationale of *Northwest Airlines* requires the conclusion that contribution is unavailable to section 1983 defendants.

*Fishman*, 604 F.Supp. at 876; (internal citations omitted). In finding that *Northwest Airlines* does not require a court to deny contribution for § 1983 claims, Justice Pollack concluded that, "[u]nless and until the Third Circuit rules otherwise, *Miller's* pronouncement that contribution is available in civil rights cases is binding on district courts in this Circuit." *Id*. at 877.

In *Alexander v. Hargrove*, the court reiterated Justice Pollack's position that *Northwest Airlines* is not determinative because the language of Title VII analyzed therein is "substantially different" from § 1983. *Hargrove*, 1994 U.S. Dist. Lexis 11674 at *13. In addition, *Hargrove* notes that the *Miller* opinion was released after the decision in *Northwest Airlines* and therefore the Third Circuit did not believe that *Northwest Airlines* had any bearing on its *Miller* opinion. *See id*. Furthermore, even if, because of the proximity of *Miller's* release in relation to the *Northwest Airlines* opinion, the court did not know of *Northwest Airline's* position, the court did not subsequently petition for a rehearing or *sua sponte* reconsider the case. *See id*. Failure to re-examine the merits of *Miller* further shows the third circuit's commitment to its decision in *Miller*. *See id*.

8

Here this Court follows the Third Circuit's determination as set forth in *Miller*, and followed by *Klaitz*, *Fishman*, and *Hargrove*. Thus, the City has a right to seek contribution for a § 1983 claim.

      b.    *New Jersey Tort Claims Act*

Section 59:5-2(b)(4) of the NJTCA provides that "neither a public entity nor a public employee is liable for . . . any injury caused by . . . a prisoner to any other prisoner." *N.J.S.A.* 59:5-2(b)(4). Essex County argues that the immunity provided by this section of the NJTCA is absolute and therefore absolves Essex County from any liability for the injuries arising from the assault on Plaintiffs. (*See* Third Party Def.'s Br. 4.) The City concedes that there is broad immunity under the NJTCA but denies that such immunity is absolute. (*See* Third Party Pl.'s Br. 7.) While this Court agrees with the City's distinction, case law suggests that the City's argument is still unavailing. Immunity under section 59:5-2(b)(4) of the NJTCA regarding prisoner-on-prisoner assault "recognizes the practical problems inherent in supervising prisoners [and] [w]hile it is necessary to provide supervision, the decision to do so . . . should not be threatened with tort liability." *White v. Lewis*, 156 N.J. Super. 198, 201 (App. Div. 1978). *White* further explains that the "N.J.S.A. 59:5-2(b)(4) was intended to insulate a public entity and employee from liability . . . even if the employee is negligent or grossly negligent in carrying out . . . [his] duties." *See id.* at 202; *see also Walker v. Glover*, No. 06-5211, 2008 WL 4606312 (D.N.J. Oct. 16, 2008) (holding that even where defendant prison employees knew or should have known that placing plaintiff in a certain jail cell would pose a serious risk of injury to Plaintiff, employees were immune from the injuries that resulted therefrom under N.J.S.A. 59:5-2(b)(4)); *Bona v. Wynn* 311 N.J. Super. 257 (Law Div. 1997) (holding that where a jailor would normally be liable for violating N.J.S.A. 30:8-5 by placing a debtor in same cell as criminals, wherein said debtor is assaulted by cell-mates, N.J.S.A. 59:5-

2(b)(4) absolves jailor of liability).  Therefore, Essex County is immune from liability for Plaintiff

Ramirez's injuries pursuant to N.J.S.A. 59:5-2(b)(4).

Though unclear from the brief submitted, the City also seems to argue, in its opposing brief,

that if Plaintiffs' injuries were the result of willful misconduct by a public official, Essex County

would be liable on the doctrine of *respondeat superior*.  (Third Party Pl.'s Br. 7.)  The City argues

that further discovery might reveal such willful misconduct thereby subjecting Essex County to

liability.  (*Id*.)  This contention is misguided.  While an exception to  immunity exists where a

public employee's misconduct is willful pursuant to N.J.S.A. 59:3-14(a), under N.J.S.A. 59:2-10, a

public entity "is not liable for the acts or omissions of a public employee constituting . . . willful

misconduct."   In *McDonough v. Jorda* 214 N.J. Super. 330 (App. Div. 1986), the Appellate

Division determined that the language of section 59:2-10 clearly states that *respondeat superior*

does not apply where a "municipal employee" commits an "intentional tort."  Furthermore, a court

may not "create municipal liability where municipal immunity is legislatively prescribed."  *Id*.

Therefore, even if upon discovery the City demonstrates that the assault on Plaintiffs was the direct

result of the willful misconduct of an employee of the Essex County Correctional Facility, under

N.J.S.A. 59:2-10, Essex County cannot be held vicariously liable.

     c.    *Iqbal and Monell*

Essex County's third legal argument seeks dismissal for insufficiency of the pleadings.

(Third Party Def.'s Br. 5.)  First, Essex County contends that the allegations in the City's complaint

are merely conclusory and fail to state a specific "allegation . . . that would provide any plausible

claim against the County or Essex."  (*Id*.)  As Essex County fails to identify any deficiencies in the

facts alleged in the City's complaint, Essex County's argument itself is a mere conclusory statement

and is insufficient to sustain this motion.

Second, Essex County seeks dismissal on the grounds that "failure to allege a pattern or practice under *Monell* is insufficient under the *Iqbal* [sic.] standard."  (Third Party Def.'s Br. 5.)  This argument is without merit and will not be addressed.  Essex County also contends that according to *Monell*, a public entity must be in "violation of a custom or practice in order to be liable under a 1983 claim" and that because the City does not allege violation of a custom or practice by Essex County, the City's complaint must be dismissed.  (*Id.*)  Essex County's reading of *Monell* is incorrect.  *Monell* holds not that a public entity must be in violation of a custom or practice, but that a government custom or practice must violate constitutional rights.  *See T&M Homes, Inc. v. Twp. of Mansfield*, 162 N.J. Super. 497, 504 (Law Div. 1978).  Essex County's failure to accurately state the relevant law renders its argument defective and unpersuasive.

## IV.    CONCLUSION

For the reasons set forth above, this Court denies Third Party Defendant's motion to dismiss Third Party Plaintiff's § 1983 indemnification claim and grants dismissal of Third Party Plaintiff's claim for violation of the New Jersey Tort Claim Act.

S/Susan D. Wigenton, U.S.D.J.

Orig:  Clerk
Cc:    Madeline Cox Arleo, U.S.M.J.
       Parties