NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE RAMIREZ, JOSHUA RUIZ,<br><br>    Plaintiffs,<br>v.<br><br>THE CITY OF NEWARK, ESSEX COUNTY CORRECTIONAL FACILITY, AND OFFICERS JOHN DOE 1-10 (names being ficticious),<br><br>    Defendants,<br><br>THE CITY OF NEWARK,<br><br>    Defendant/ Third Party Plaintiff,<br><br>COUNTY OF ESSEX, ESSEX COUNTY PROSECUTOR'S OFFICE, RICHARD ROE, DAVID ZOE (names being ficticious)<br><br>    Third Party Defendants. | Civil Action No. 11-CV-1150 (SDW-MCA)<br><br>**OPINION**<br><br>January 28, 2014 |

**WIGENTON**, District Judge.

Before this Court are two separate Summary Judgment Motions filed by Defendant City of Newark and Third Party Defendant County of Essex ("Essex County"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Newark's motion in part and **GRANTS** Newark's motion in part, but **GRANTS** Essex County's motion.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case is about Plaintiffs George Ramirez ("Ramirez") and Joshua Ruiz ("Ruiz") (collectively, "Plaintiffs") seeking redress for their arrest and detention in the City of Newark (the "City" or "Newark") and subsequent incarceration in the Essex County Correctional Facility. On June 3, 2009, Plaintiffs were apprehended by officers of the Newark Police Department while they were driving in a vehicle on Montclair Avenue in Newark, NJ. (*See* Pls.' Am. Compl. ¶¶ 10-11.) Plaintiffs had just left a job center and were on their way to pick up a friend when police cars suddenly surrounded Ramirez's vehicle and officers approached the vehicle with guns drawn. (*See id.* at ¶ 11; Pls.' Supplemental Statement of Undisputed Material Facts ("SSUF") ¶ 1.) After Plaintiffs exited the vehicle, they were forced to the ground and handcuffed. (*See* Pls.' Am. Compl. ¶ 11.) The victims of the crime that Plaintiffs had allegedly committed were then asked to identify Plaintiffs. (Pls.' Responsive Statement of Undisputed Material Facts "RSUF" ¶ 1.) Victim no. 1 positively identified Plaintiffs as the assailants, although Plaintiffs were face down on the ground and victim no. 1 was sitting in the back seat of a police car and not wearing his glasses. (*Id.*) After the identification, Plaintiffs were then transported to the Second Precinct at One Lincoln Avenue and placed in a cell for several hours without having been read their Miranda rights or informed of the charges against them. (Pls.' SSUF ¶¶ 3-4; Pls.' Am. Compl. ¶ 11.) Plaintiffs were later transported to Newark Central Booking where they were held for five days prior to appearing before a judge. (Pls.' Am. Compl. ¶ 11.) Plaintiffs were then transferred to Essex County Correctional Facility. (Pls.' SSUF ¶ 5; Pls.' Am. Compl. ¶ 11.) It should be noted that at no time were Plaintiffs identified in a lineup or identified in any other manner after the initial identification. (Pls.' RSUF ¶ 1.)

While incarcerated at Essex County Correctional Facility, Plaintiffs were assaulted by unknown inmates. (Pls.' RSUF ¶ 7.) Ramirez's head was repeatedly bashed into a toilet by other inmates, resulting in Ramirez getting seven stitches to heal a wound on his head. (Pls.' SSUF ¶ 7.) Ramirez now has a two to three inch scar on his forehead to which he must apply skin cream daily. (*Id.*) After his release, he was reclusive and did not want to socialize. (*Id.*) For his part, Ruiz was physically and sexually assaulted, resulting in chipped teeth, hot flashes, cold sweats, and traumatic flashbacks. (*Id.* ¶ 6.) He developed kidney stones from the high-sodium food served in Essex County Correctional Facility. (*Id.*) Additionally, the incarceration period ended the relationship with his high school sweetheart and mother of his child. (*Id.*) Plaintiffs were offered plea bargains on three separate occasions while they were incarcerated in Essex County Correctional Facility, but they denied each offer, proclaiming that they were innocent of the charges filed against them. (Pls.' SSUF ¶ 5.) After being held at the Essex County Correctional Facility for thirteen months, the Essex County Prosecutor's Office dismissed the charges against Plaintiffs. (Def.'s Statement of Undisputed Material Facts "SUF" ¶ 6.)

On March 1, 2011, Plaintiffs filed a Complaint against ten unnamed police officers of the Newark Police Department and the City itself (collectively, "Newark"). (Dkt. No. 1.) On April 29, 2011, Plaintiffs filed an Amended Complaint adding Essex County Correctional Facility as a defendant. (Dkt. No. 5.) The Amended Complaint asserts six different causes of action. (*See id*.) First, Plaintiffs allege that Defendant Police Officers, the City, and Essex County Correctional Facility, acting willfully and knowingly, deprived Plaintiffs of their rights secured by the Fourth and Fourteenth Amendments to the Constitution in violation of 42 U.S.C. § 1983. (Pls.' Am. Compl. ¶¶ 30-33.) Second, Plaintiffs alleged that Defendant Officers willfully deprived Plaintiffs of their constitutional rights under Article 1, Section 7 of the New Jersey Constitution, and that the

City is vicariously liable for said deprivation. (*See id*. at ¶¶ 37, 38.) Third, Plaintiffs claimed damages for the "willful, unlawful, unwarranted, and intentional assault and battery upon Plaintiffs" committed by Defendant Officers. (*Id*. at ¶ 41.) Fourth, Plaintiffs alleged that the City maliciously prosecuted them by bringing criminal charges against them absent probable cause. (*See id*. at ¶ 44.) Last, Plaintiffs claimed that the City negligently hired and retained officers it had reason to know posed a danger to society thereby resulting in Plaintiffs' injuries. (*See id*. ¶¶ 50-55.) Plaintiffs and Defendants stipulated to the dismissal of the fifth cause of action claiming negligent infliction of emotional distress. (Dkt. No. 13.)

On July 26, 2011, the City filed an answer to Plaintiffs' complaint. (Dkt. No. 14.) Then, on January 13, 2012, the City filed a motion seeking an order permitting leave to file an amended answer to Plaintiffs' amended complaint and a third party complaint. (Dkt. No. 27.) The motion was granted and the City subsequently filed an amended answer to Plaintiffs' complaint and a third party complaint against the Essex County Prosecutor's Office and Essex County seeking indemnification from Essex County for Plaintiffs' injuries. (Dkt. No. 30.)

On March 26, 2012, Essex County filed a motion to dismiss the City's third party complaint. (Dkt. No. 36.) In an Opinion dated July 14, 2012, this Court granted Essex County's motion inasmuch as the City asserted tort claims against Essex County; however, this Court denied Essex County's motion with respect to the City's contribution claims for damages relating to Plaintiffs' § 1983 claims. *See Ramirez v. City of Newark*, Civil Action No. 11-CV-1150 (June 14, 2012). Thereafter, both Essex County Correctional Facility (dkt. no. 72) and the Essex County Prosecutor's Office were dismissed as defendants, leaving only the City as a defendant and Essex County as a third party defendant.

On June 6, 2013, Essex County filed the instant summary judgment motion seeking to end the City's third party action. (Dkt. No. 78.) The next day, the City filed its own summary judgment motion looking to obtain judgment against Plaintiffs. (Dkt. No. 79.)

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather should determine whether there is a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it]

has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## III. DISCUSSION

### A. The City of Newark's Summary Judgment Motion

#### 1. Qualified Immunity

As a threshold matter, the City argues that it is entitled to qualified immunity for the actions of its officers. Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier* v. *Navarette*, 434 U.S. 555, 565 (1978)). In determining whether qualified immunity applies, the first step is to determine whether the officer violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The second step is to assess whether the right was clearly established when the defendant engaged in the misconduct. *Id.*

Here, the undisputed evidence shows that the officers arrested Plaintiffs based upon the identification of a victim who was not wearing his glasses and sitting in the back seat of a police car; Plaintiffs were also face down on the ground at the time of the identification. No further identification attempts of Plaintiffs were made. Significantly, a grand jury did not indict Plaintiffs for the crimes for which they were arrested. After their arrest, Plaintiffs were also confined to a jail cell for five days before they appeared before a judge. On this evidence, a jury could conclude that Plaintiffs' rights under the Fourth and Fourteenth Amendments were violated. Moreover, these rights were clearly established when Plaintiffs were arrested. Therefore, qualified immunity is inapplicable.

## 2. Plaintiff's Section 1983 Claims

Plaintiffs assert § 1983 claims based upon the City's deprivation of their Fourth and Fourteenth Amendment constitutional rights. (Pls.'s Opp. Br. 8-12.) The City argues that Plaintiffs cannot prove § 1983 violations because they have failed to obtain discovery on the customs and practices of the Newark Police Department. (Def.'s Br. 9.) As such, Newark argues that Plaintiffs cannot establish an essential element of their § 1983 claims. *Id.* Plaintiffs counter that the actions of the police officers in failing to read Plaintiffs their Miranda rights, allowing them access to an attorney, taking their statements, or obtaining evidence to corroborate the victims' account of the events give rise to an inference of a custom of the City's police officers violating constitutional rights. (Pls.' Opp. Br. 12.)

In relevant part, § 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. In general, a public entity may not be liable under § 1983 for the actions of its employees unless the injury is the result of the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citation omitted). A custom, on the other hand, is an act that although has not been officially approved by an appropriate decisionmaker, is "so widespread as to have the force of law." *Id.* (citation omitted). The Third Circuit has articulated

three situations in which a public entity may be liable under § 1983: (1) the alleged injury results from a public employee implementing a "generally applicable statement of policy"; (2) although there is no stated policy, the policymaker acts in violation of a federal law; and (3) "the policymaker has failed to act affirmatively at all, . . . [such] that the policymaker can reasonably be said to have been deliberately indifferent to the [obvious] need" to act. *Id.*

Here, genuine questions of material fact exist as to whether the police officers acted reasonably in their apprehension, arrest, and incarceration of Plaintiffs. A jury could conclude that the identification of Plaintiffs was unreliable because Plaintiffs were face down when they were identified, and the victim was sitting in the back of a police car, not wearing his glasses. Additionally, a jury could also determine that it was unreasonable to deprive Plaintiffs of their liberty by confining them to a jail cell after their arrest for five days before they appeared before a judge. A jury could very well find this to be a violation of Plaintiffs' rights under the Fourth Amendment to be free from unreasonable searches and seizures. Thus, genuine issues of material fact exist as to whether Newark violated Plaintiffs' constitutional rights secured by the Fourth and Fourteenth Amendments, and Newark's summary judgment motion is denied inasmuch as it seeks judgment on Plaintiffs' § 1983 claim for violation of their Fourth and Fourteenth Amendment rights[1].

Furthermore, Plaintiffs assert § 1983 malicious prosecution claims. (Pls.'s Opp. Br. 9-12.) "To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the

---

[1] Plaintiffs' cause of action in Count II for violation of the New Jersey State Constitution is properly brought pursuant to the New Jersey Civil Rights Act ("NJCRA"). *N.J.S.A.* 10:6-1 *et seq.* It is well-settled that NJCRA claims are interpreted analogously to § 1983. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011); *see also Hurdleston v. New Century Financial Servs., Inc.*, 629 F. Supp. 2d 434, 443 (D.N.J. 2009). As such, Plaintiffs' claims for violation of New Jersey State Constitution are duplicative of their § 1983.

criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

The undisputed evidence shows that Newark initiated criminal proceedings against Plaintiffs, that the criminal proceedings ended in Plaintiffs' favor, and that Plaintiffs suffered deprivation of liberty consistent with the concept of seizure. (*See* Def. Ex. H, Dismissal Order, May 27, 2010.) Newark does not contest that the evidence establishes these three elements. (Defs.' Br. 15-16.) Newark, however, does argue that probable cause existed to arrest Plaintiffs. (*Id.*) They point to the fact that a grand jury indicted Plaintiffs. (*Id.*) This argument is unavailing. Although a grand jury indictment creates a presumption of probable cause, this presumption is rebuttable. *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)). Nevertheless, Plaintiffs were *not* indicted for the charges for which they were arrested, namely, carjacking, kidnapping, robbery, and conspiracy with respect to victim no. 2. (*See* Def. Ex. D, Arrest Report; Def. Ex. H, Dismissal Order, May 27, 2010.) The fact that the grand jury appears to have indicted them under a conspiracy/accomplice liability theory with respect to victim no. 1 does not substantiate the initial charges. (*See* Def. Ex. H, Dismissal Order, May 27, 2010.) In the malicious prosecution context, where there is prosecution for more than one charge, probable cause must exist for each charge. *See Johnson*, 477 F.3d at 85 ("[A] cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge . . .

9

.") Here, a reasonable jury could conclude that the police officers lacked probable cause to arrest Plaintiffs. As discussed *supra*, a jury could determine that the identification of Plaintiffs was invalid, and without a proper identification of Plaintiffs, the officers did not possess probable cause to arrest them. Moreover, whether or not probable cause exists in a § 1983 action is generally a question of fact for the jury. *Merkle v. Upper Dubin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (citing *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998)).

There is also a question of fact regarding whether the officers possessed malice. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Morales v. Busbee,* 972 F. Supp. 254, 261 (D.N.J. 1997). A reasonable jury could determine that the police officers lacked a belief in the propriety of the arrest of Plaintiffs. The undisputed evidence shows that the police officers were reluctant to arrest Plaintiffs. One officer commented that the circumstances surrounding the underlying criminal incident did not make sense. (*See* Def. Ex. J, Plaintiff Joshua Ruiz Deposition at 35:1-15 (February 11, 2013).) The officers also mentioned that they did not have any reason to arrest Plaintiffs. (*Id.*) Nevertheless, Plaintiffs were still arrested and jailed. Thus, a jury could conclude that the officers acted with legal malice in arresting Plaintiffs. Therefore, Newark's summary judgment motion with respect to Plaintiffs' § 1983 malicious prosecution claim is denied.

### 3. Plaintiffs' Assault and Battery and Negligent Hiring and Retention Claims

Plaintiffs also assert causes of action for assault and battery and negligent hiring and retention. Under New Jersey law, police officers are privileged to use as much force as necessary to effectuate an arrest; if the officers use more force than necessary in making an arrest, the officers may be liable for assault and battery. *See Hill v. Algor*, 85 F. Supp. 2d 391, 411 (D.N.J. 2000); *see*

*also Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir. 1995). Here, there is no evidence of record that the police officers used excessive force in arresting Plaintiffs. Plaintiffs have not advanced any evidence establishing that the arresting officers used more force than was necessary to arrest them and therefore, Newark is entitled to summary judgment on Plaintiffs' assault and battery claim.

Likewise, Plaintiffs' negligent hiring and retention claim fails as well. New Jersey law subjects a municipality to liability for its own negligence in the hiring and retention of a police officer. *Denis v. City of Newark*, 307 N.J. Super. 304, 312-14 (App. Div. 1998). A plaintiff must demonstrate that the municipality knew or should have known of the police officer's dangerous propensities to be successful under this theory. *Id.* Specifically, the plaintiff must first prove that the municipality "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." *Di Cosala v. Kay,* 91 N.J. 159, 173 (N.J. 1982). Second, the plaintiff must prove that, as a result of the municipality hiring the officer, the officer's "incompetence, unfitness or dangerous characteristics" was the proximate cause of his injuries. *Id.* at 174. There is no evidence of record with regard to the officers' "incompetence, unfitness or dangerous characteristics." As such, Newark is entitled to summary judgment on Plaintiffs' negligent hiring and retention claim.

### B.    Essex County's Summary Judgment Motion

Essex County moves for summary judgment on Newark's contribution claim arguing, *inter alia*, that it is not subject to § 1983 liability. (Third Party Def.'s Br. 8-9.) The gravamen of Essex County's argument is that since this Court has already dismissed any tort claims against it and the only remaining claim against it is Newark's § 1983 contribution claim, Essex County is entitled to

summary judgment on the remaining claim because the undisputed evidence shows that it is not liable to Plaintiffs. (*See generally*, Third Party Def.'s Br.)  Newark counters that Plaintiffs remained in Essex County's custody for the vast majority of the time Plaintiffs were incarcerated because Plaintiff's were held in the Essex County Correctional Facility.  (Third Party Pl.'s Br. 5-6.)  As such, Newark argues, Essex County is subject to § 1983 liability.  (*Id.*)

As in initial matter, in the Opinion dated June 4, 2012, this Court dismissed any tort claims against Essex County but maintained Newark's third party § 1983 contribution claims, which is the only remaining claim against Essex County.  *See Ramirez v. City of Newark*, Civil Action No. 11-CV-1150 (June 14, 2012).  "Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." *Northwest Airlines v. Transp. Workers Union*, 451 U.S. 77, 87-88 (1981).  Contribution recognizes "the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation." *Id.* Accordingly, in order for contribution to apply, there must be two or more joint tortfeasors. *See id.*

An analysis of the Amended Complaint, the parties' briefs, and the evidence of record as developed during discovery reveals that Plaintiffs do not have any direct claims against Essex County.  Thus, Essex County cannot be adjudged a joint tortfeasor and contribution is inapplicable.  Indeed, to the extent that the evidence shows that Plaintiffs have claims for inmate-on-inmate assault that they experienced while incarcerated in the Essex County Correctional Facility, this Court has already dismissed Essex County Correctional Facility as a defendant.  (Dkt. No. 72.)  Plaintiffs' remaining claims in this matter are only against Newark; Plaintiffs did not assert any claims against Essex County directly.  In any event, this Court has already ruled that pursuant to

the New Jersey Tort Claims Act, *N.J.S.A.* 59:5-2(b)(4), Essex County is immune from Plaintiffs' inmate-on-inmate claims that arose during their incarceration in the Essex County Correctional Facility. *See Ramirez v. City of Newark*, Civil Action No. 11-CV-1150 (June 14, 2012). In conclusion, because Essex County is not a joint tortfeasor, Newark's § 1983 contribution claim is not cognizable. Therefore, Essex County is entitled to summary judgment on Newark's § 1983 contribution claim.

## IV. CONCLUSION

For the reasons set forth above, this Court grants Newark's summary judgment motion with respect Plaintiffs' assault and battery and negligent hiring and retention claims; however, this Court denies Newark's summary judgment motion with respect to Plaintiffs' § 1983 causes of action. This Court also grants Essex County's summary judgment motion.

S/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
      Parties